IN RE J. Z. A. WAGNER. APPEAL FROM REFUSAL TO GRANT PATENT.

OATH OF INVENTION—EFFECT OF.—The oath attached to the application is *prima-facie* evidence of the novelty of the invention disclosed therein.

INVENTION—BRICK PRESS—CHANGE OF SHAPE—ANALOGOUS USE.—It is not a mere change of form to adapt a brick press to the manufacture of tubular brick, by providing the mold-box with a core and a hollow bottom or plunger fitted to discharge the tubular brick; nor is such a machine sufficiently analogous in its uses to be anticipated by a cracker machine, which is similarly provided with a core and a hollow discharging plunger; nor is it anticipated by a brick machine with a solid plunger and a core extending part way only into the brick; nor by all of these together.

SM—COMBINATION.—When the claim is for a combination of parts, it is immaterial that the elements of which the combination is made up have been before used for different purposes. If these have been brought together for the first time, and produce a new and useful result, it will be a patentable combination.

(Before MORSELL, J., District of Columbia, March, 1857.)

## STATEMENT OF THE CASE.

The alleged invention of the applicant was an improved brick machine for making tubular or perforated brick. The claim of invention will be readily understood by reference to the original Wagner brick machine, patented April 8th, 1851, No. 8021, cited as a reference by the Commissioner.

*Wagner's Patent of* 1851.

This machine, which is here illustrated by a figure taken from the drawing accompanying the patent, is a rotary brick press designed to make solid brick of the usual form. The molds *a*, of the desired shape, are arranged at intervals around the periphery of the mold wheel or cylinder *C*. The clay passing down through the trough or chute is pressed into the rolls by the first pressure roller *F*. As the wheel revolves, a second pressure roller *K* complètes the operation. It will be noticed that the bottom of the molds are formed by the loose movable plates *b*. As each mold successively reaches the lowest portion of the wheel, the bottom plate of the mold is pressed downwards by proper actuating devices, so as to force out or discharge the completed brick, which is deposited on the endless belt *N*.

Coming, now, to the alleged improvement which was under discussion in this case, it consisted in providing the mold or mold box with a central core of a length equal to the thickness of the brick, so as to form a corresponding perforation in the same. This core did not reciprocate with the bottom plate or discharging plunger, but passed through it, and was attached to another part of the machine, so as to be held in a permanent position. This resulted in what the applicant calls in his claim "the annular bottom or piston," which was suitably perforated so that it might slide up and down the fixed core and discharge the bricks as before. The claim seems to have been treated by the Commissioner and the judge as though it were limited to a fixed core extending completely through the brick, although it will be noticed that no such limitation is expressed in the terms of the claim. In the bread or cracker machine patented by William Carr July 22d, 1843, the dough is fed from a trough between two smooth-faced rolls or cylinders, which deposit the dough in the form of a flat sheet of the desired thickness upon an endless belt. It is then carried along by the belt beneath the cutter *C*, which is forced downward at the proper time, and separates the dough into suitable lengths to form the biscuits or crackers.

*Carr's Cutter.*

The crackers are at the same time perforated by the down-wardly-projecting points 4. A movable stripper plate *D* forces the crackers out of the cutter.

In the argument of the Commissioner, it would seem that this cutter was regarded as the equivalent of the applicant's mold box, the stripper plate *D* being the annular bottom or discharging plunger, and the pins 4 representing the fixed cores.

MORSELL, J.

Appeal from the decision of the Commissioner of ·Patents refusing to grant him a patent for his invented new and useful improvements in brick machines or presses.

The claim is set forth in these words: "Having thus described my improved machine for making tubular bricks, what I claim therein as new, and desire to secure by letters-patent, is the combination of the mold box with a core and an annular bottom or piston, the whole constructed and operating substantially as therein set forth." The description alluded to makes the drawings filed a part thereof, and is sufficiently special to distinguish the old and new parts of the machine; and the oath of the party, as the law directs, stating that he verily believes himself to be the original and first inventor of the improvement, &c., accompanies the same.

This application was rejected by the· Commissioner upon the general ground of want of patentable novelty. The letter of rejection is dated 29th of July, 1852. The Commissioner says: "The combination of the core with the perforated discharging plunger is very common in cracker machines and other machines, and its application in forming a perforated brick cannot be regarded as a new invention. An example of the device in question may be seen in the cracker machine of William Carr, patented July 22d, 1843." In his letter of the —— day of October, 1852, (after the amended specification,) affirming the decision which he had already made, among other things, he says: "The combination specified in your claim for molding tubular bricks mechanically runs through the features of known machines, particularly that formerly patented by you, with the exception of the fixed core in the molds and the annular bottom or plunger for expelling the tubular brick. If a patent be granted, it must be based on that point of difference. Now, it must be remembered that fixed cores are a

well-known mode of molding hollow or annular or tubular articles, and that they have been used in molding bricks. One or more brick molds may be referred to in the Office in which the core extends to half way, more or less, through the thickness of the brick. The idea, therefore, after the suggestion of a tubular brick, of molding the brick in that form in your [Wagner's] machine, by putting a core into the mold of the same thickness with the brick, appears to me to be obviously suggested by the well-known use of cores, as above stated, and not to be a new invention or discovery; and if that idea be not a new invention, I am clearly of opinion that the idea in connection therewith of using the perforated plunger where the solid one was used is not, since that follows *ex necessitate*, being no more than the accommodation of the form of the plunger to that of the brick; more especially is this the case of perforated plungers in bread and cracker machines, as referred to in the communication of the 29th ultimo. The expulsion of the brick from the mold without breaking off the corners is not a property peculiar to the perforated plunger, for its action in this respect is like that of the solid plunger.''

In his appeal from this decision the appellant filed nine reasons of appeal, the substance of which is: The first is almost in the words of the seventh section of the act of 1836. In the second, there is nothing sufficiently specific. Third. The Commissioner erred in rejecting the application upon the ground that other machines are susceptible of being so altered as to become capable of operating like the combination invented and claimed by the applicant. Fourth. Because the Commissioner's admission that the features of the fixed core in the mold and the annular bottom in appellant's combination does not run through the features of any known machines, amounts to an admission that the whole invention claimed is new. Fifth. Because there is no evidence in this cause to justify the decision that cores have been used in molding tubular bricks. Sixth. Because Carr's cracker machine is no applicable reference, being designed for rolling, and not designed either for molding anything nor adapted to molding bricks. Seventh. Because he decided appellant's combination of three elements to be old, because each of said elements is

33

suggested by something in other machines, or follows *ex necessi-tate* from the tubular form of the brick to be molded. Eighth. Because the facts stated upon the face of the Commissioner's decision itself do not justify the refusal of a patent as asked for, but, on the contrary, furnish a legal presumption that the appellant is in fact what he claims to be—the first who ever invented auto-matic machinery for molding tubular bricks, &c. The ninth is general.

The Commissioner's report in reply to said reasons is in sub-stance as follows :

The appellant took out a patent under date of April 8th, 1851, (No. 8024,) for a brick machine, consisting in a certain manner of combining a mold wheel, a press wheel, and pistons for expelling the molded bricks. Subsequently he applied for a patent for a machine in which, the combination being otherwise the same, the shape of the molds and expelling pistons was adapted to the production of a perforated or tubular brick instead of a solid one. This variation of the patented machine was decided by the Office not to be patentable, the reasons for which decision were fully given in the official letter addressed to the applicant under date of October 2d, 1852. It is from this decision that the applicant now appeals.

The doctrine of the decision is that the patented machine is not confined in its application to the production of bricks of the one form shown in the patent, but that it may, without the exer-cise of invention, be adapted to the production of other forms by simply changing the shape of the molds and expelling pistons. The only limitation of its application is to the production of forms that are prismatic or nearly so. If one desired to use it for the production of bricks of a hexagonal shape, he would only have to make the molds in the machine of that shape, and of course the pistons of the same shape as the molds, and there would be no more invention in this than for a founder to make a mold of the same shape as the desired casting. So, also, if one desired to produce a brick of the form of a cross, he would of course make the molds and pistons of that shape. And the perforated or tubular brick is only another of the different prismatic forms to which the patented machine may be adapted by making its molds and pistons of that shape. But if it should be objected that this

requires invention, because all perforated or tubular forms have
a character that distinguishes them from all non-perforated forms,
and that it would not occur to one without invention that a mold
could be adapted to such perforated form, because it involves a
core, nor that a piston could be adapted to a mold of that shape,—
this objection, if any weight, is neutralized by the fact that nothing
is more common than molds with a core for perforated prismatic
forms, and that, besides this, pistons have been adapted to such
forms.    Molds with cores have been used in forming perforated
bricks.    This is not called in question, and a reference would be
unnecessary.    One may be found, however, in the brick press of
Mercy Wright, patented May 15th, 1841, No. 2093.

Some of the reasons of appeal are not specific, only amounting
to an assertion that the decision of the Commissioner is erroneous.
They do not call, therefore, for any special notice.    The fourth
reason of appeal takes the same view of the main point on which
the claim of the applicant is based as the Office has done.    In
reference to the sixth reason of appeal, it is true that in cracker
machines there is a difference in the manner of operating upon the
material, because the material is of a different nature; but the case
referred to is in point to show that it is not a new thing to adapt
a piston to that shape of mold ; for, notwithstanding the different
manner of operating upon the material, it may be properly termed
a mold in which a core is used.    And here the Office will make a
remark which has an important bearing upon the whole case ; that
is; that the question is not only whether the machine in question
differs from every other one machine, but whether what difference
or differences there are are the product of invention.    No doctrine
is better settled by the courts than that it is not all differences
that are patentable.    The difference must be one that is produced
by invention ; and whether it be such, is to be determined by an
examination of the nature of its relation to things that have pre-
ceded it.

The points made by the Office are intended to show that while
there is in this case, in some sense, a difference from any one
prior machine, there is no difference that has been produced by
invention.

Due notice having been given of the time and place for hearing,
the Commissioner laid before me all the original papers in the

case, together with his decision, the reasons of appeal, and his report in reply to said reasons. An examiner appeared on the part of the Office, and the appellant by his attorney; and the said agent on the part of the Office being examined as to the nature of the said invention, the first interrogatory put to him by appellant's counsel was: Question: "Does any brick machine to which you made reference in the examination of Wagner's application contain the entire combination which he claims?" Answer: "No; of course it does not." Question: "Do you know of any machine whatever capable of producing a brick like the one now before you by the mode of operation by which Wagner's machine produces such a brick? If so, please to state where the machine is to be found." Answer: "I do not know of any machine that would produce a perforated brick automatically by the same mode of operation."

I have deemed it proper thus to make a full statement, that all the points of objection, with the manner in which they are met, might appear. Summarily, then, it will be observed that the Commissioner concedes that the machine with its improved combined invention, for which a patent is asked is different from any other machine which he knows of in respect to its contrivance for the production of a perforated brick automatically by the same mode of operation, and that the brick machine to which he made a reference in the examination of Wagner's application does not contain the entire combination which Wagner now claims; and that no other known machine contains the said combination specified in the appellant's claim for molding tubular bricks mechanically of a fixed core in the molds, and the annular bottom or plunger for expelling the tubular brick. This, then, is a conceded difference, and there has been no denial that the so improved machine is capable of producing a successful, new, and useful result. But the Honorable Commissioner supposes that the difference is merely in form, and without amounting to invention; and his reasons, as understood, are: First. Because the same is substantially covered by the appellant's patent dated the 8th of April, 1851. But as no more can be supposed covered by the patent than is embraced by the specification, and such upon examination appearing not to be the case, as so stated by the patentee himself, together with his declaration that he made no such claim under said patent, the objection, therefore, as to

this reference cannot be considered as sustained in point of fact. Second. For the like purpose of proving an analogous use, various cases or instances are referred to to show that molds with a core for perforated prismatic forms were in common use, and that pistons have been adapted to such forms ; also that molds with cores have been used in forming perforated bricks. The cracker machine was also referred to. As to this, I cannot discover much, if any, analogy ; and the Commissioner himself admits that there is a difference in the manner of operating upon the material, because it is of a different nature; from all which the Commissioner concludes the improvement to be a difference without invention. Without being more particular as to the application of those instances in point of fact to the present case, I shall proceed to consider the case with respect to the rules of law applicable to the objections so raised by the Commissioner. And the first in order is that which is involved in the first reason of appeal, which is the limit of the power and the duty of the Commissioner under the seventh section of the act of 1836. The words of the law are very plain and clear, and would seem not to require a reference to any authority ; but I prefer referring to the opinion of Judge Cranch in the case of Heath *v.* Hildreth (*ante*, p. 12), in the year 1841, and ever since acquiesced in by the Office. He says: '' It appears by the proceedings before the Commissioner that Mr. Heath regularly filed his application, description, and specification, and paid the duty ; that the Commissioner made the examination, and that upon such examination it did not appear to him that the same had been invented or discovered by any other person, or had been patented or described in any printed publication in this or any foreign country prior to the alleged invention or discovery thereof by the applicant, or that it had been in public use or on sale with the applicant's consent or allowance prior to his application. The Commissioner was therefore *prima facie* bound to issue the patent to Mr. Heath.''

It is, however, I think, the duty of the Commissioner to decide whether the invention is new and whether it is the proper subject of a patent. In connection herewith, I will also state that the oath of the party is to be considered in the character of *prima-facie* evidence of the novelty of the invention. (Alden *et al. v.* Dewey *et al.*, 1 Story, 336.) According to this admitted construction, it may be properly insisted that it is the Commissioner's

duty and power to resort to any circumstances legitimately in his possession for the purpose of repelling the presumption ; and that brings me to the consideration of the next point in the case, and that is as to the various instances of supposed analogous use referred to to show want of invention.

It will be remembered that the claim in this case is rested upon the ground of the combination of the three elements—the mold box with a core, and an annular bottom or piston in the construction of the machine, as particularly described in the specification. The Commissioner appears to be in error in supposing that if any of the elements forming the claimed invention had been used before for other purposes, that this was sufficient proof of the want of novelty.    The books abound with cases to show that such is not the rule.    Let a reference to one suffice.    Mr. Justice Story, in Byam *v.* Goodwin, 3 Sum., 514, says : "It is certainly not necessary that every ingredient, or indeed that any one ingredient, used by the patentee in his invention should be new or unused before for the purpose of making matches.    The true question is whether the combination of materials by the patentee is substantially new. Each of these ingredients may have been in the most extensive and common use, and some of them may have been used for matches or combined with other materials for other purposes. But if they have never been combined together in the manner stated in the patent, but the combination is new, then, I take it, the invention of the combination is patentable."

Again, the result was successful in being capable of producing a brick of a new and useful character.    In Curtis, sec. 15, the rule as a test is stated thus : "The utility of the change is the test to be applied for this purpose.    As there cannot be a decidedly useful new result without some degree of invention in producing the change which effects that result, when a real utility is seen to exist, a sufficiency of invention may be presumed."

I have thus endeavored to apply the principles applicable to this case, and I am brought to the conclusion to think that the decision of the Commissioner is erroneous in not having duly adverted to them, and that said decision ought to be reversed and a patent granted to the appellant as prayed.

*P. H. Watson*, for the appellant.