KLAUDER–WELDON DYEING MACH. CO. v. STEADWELL DYEING
MACH. CO. et al.

(Circuit Court, N. D. New York. May 13, 1903.)

1. PATENTS—INVENTION—DYEING MACHINE.
　　The Weldon patent, No. 354,281, for a dyeing apparatus, consisting of
a perforated rotary cylinder, the lower part of which is immersed in the
dye liquor, and having on the interior of its periphery angular or V-shaped
buckets, in which the articles to be dyed are placed, was not anticipated,
and embodies a combination of old elements which is substantially
different in construction and operation from anything in the prior art,
and which accomplishes so much better results as to disclose invention.
Claims 1, 2, 3, and 4 *held* infringed.

2. SAME—CONSTRUCTION OF CLAIMS.
　　The law construes the claims of a patent to extend to variations in
form or proportions of the thing patented.

This bill in equity was filed herein, praying that the defendants, and
each and every of them, may be restrained and enjoined, provisionally
and perpetually, from directly or indirectly making, constructing,
using, vending, delivering, working, or in any wise counterfeiting or
imitating, claims 1, 2, 3, and 4 of letters patent for dyeing apparatus,
No. 354,281, dated December 14, 1886, and for which application
was filed September 15, 1886, and also praying an accounting by the
defendants of the profits they have acquired and the damages suffered
by the complainant by reason of an alleged infringement of the said
patent.

Duell, Megrath & Warfield, for complainant.

White & Ferguson (Frederick W. Cameron, of counsel), for defend-
ants.

RAY, District Judge. The letters patent in question were duly
issued to Leonard Weldon December 14, 1886, upon an application
filed September 15, 1886, for a dyeing apparatus. April 19, 1891,
the said patent, and all right, title, and interest in and to the same,
were duly assigned to the complainant by an instrument in writing
recorded in the transfers of patents of the United States Patent Office
on the 3d day of July, 1891, in Liber W44, p. 142, of transfers.

Claims 1, 2, 3, and 4 of said patent, alleged to be infringed, read as
follows:

"(1) In a dyeing apparatus, the combination, with the rotary wheel or
cylinder, of buckets formed angular in cross-section, as and for the purpose
specified.

"(2) In a dyeing apparatus, the combination, with the rotary wheel or
cylinder, of buckets in said cylinder adjacent to the periphery thereof, and
of angular form in cross-section, substantially as shown and set forth.

"(3) In a dyeing apparatus, the combination, with the rotary wheel or
cylinder, of buckets of angular form in cross-section, and adjacent to the
periphery thereof, and perforated partitions extending from the inner edge
of the buckets toward the center of the wheel or cylinder, substantially as
described and shown.

"(4) In a dyeing apparatus, the combination, with the rotary cylinder, of
buckets of V shape in cross-section, and having one side solid and the other
side perforated, and the solid side thereof constituting a longitudinal section
of the exterior of the cylinder, substantially as described and shown."

The rotary wheel or cylinder containing the buckets of angular form is made to revolve upon an axle, and is partially submerged in the dye liquor contained in a water-tight vat. The cylinder is perforated so as to admit the dye liquor to enter these buckets, each of which forms a compartment by itself, but each is so perforated that the dye liquor may pass from one bucket or compartment to another. The garment or materials to be dyed are placed within the bucket. Each bucket or compartment may contain material to be dyed, and, the cylinder being set in motion and revolved rapidly, the articles to be dyed are intermittently dipped in the dye liquor; but each bucket retains and carries the liquor contained therein above the surface of the liquid in the vat, so that the process of dyeing the material is constantly going on. The purpose of the angular or V-shaped buckets is to prevent the articles or fabric to be dyed from slipping or sliding to one end of the bucket, and there being rolled over and over, and knotted or otherwise so rolled together as to prevent the liquid from spreading uniformly through the fabric and producing a uniform coloring; also to expose equally to the direct action of the dyeing liquid both sides of the fabric in each compartment, by turning it over with each revolution of the cylinder.

Prior to 1886 the dyeing of various classes of material was accomplished by placing the stock to be dyed in the liquor in a large, open vat, and then stirring the same about and turning it over by hand. Workmen stood about the vat and stirred the contents with poles, and, as a consequence, many times the material to be dyed was torn and tangled, knotted, snarled, or otherwise damaged, and many times the coloring was uneven and unsatisfactory. The process was also slow, laborious, and expensive. Prior to the issuing of the patent in question, several dyeing machines, intended to take the place of the process mentioned, had been invented; and some had been patented, but none of these proved successful, and the process described was in common use. The proof is quite satisfactory and conclusive that since 1886 the machine constructed under and described in the patent in question has come into common use and supplanted all others, and has taken the place of the old process.

In the patent in question the patentee thus describes the buckets, their location and operation:

"The cylinder, C, I form of two stout heads, b, b, preferably each composed of two thicknesses or layers of wood, with the grain of one layer running crosswise the grain of the other layer, so as to prevent the warping of the heads; said heads being secured to a wooden roller, c, through which the shaft, d, of the cylinder is extended, and to which it is fastened. Lengthwise the interior of the cylinder, C, are extended a series of buckets, L, L, which are secured at their ends to the inner sides of the heads, b, b. These buckets are formed either V-shaped or similar angular shape in cross-section, and are arranged adjacent to the periphery of the cylinder, and preferably in such positions as to make one side, e, of each bucket form a longitudinal section of the exterior of the cylinder; said side of the bucket being solid, while the other side, e', of the bucket is perforated, or composed of slats placed short distances apart. From the inner edge of each bucket, L, toward the center of the cylinder, is extended a slatted or perforated partition, n, and near the aforesaid edge of each bucket is hinged at one edge a gate, f, which has its free edge extended toward the back of the adjacent bucket.

In the operation of the described dyeing apparatus, the fabric or articles to be dyed are thrown into the buckets, L, L, from the top of one side of the vat, and by the rotation of the cylinder, C, said articles are carried in the buckets through the dye-liquor in the vat, and are thus intermittently dipped or immersed therein. The angular or V shape of the buckets causes the articles to be retained in the buckets after leaving the bath of dye-liquor without moving from the positions in which they were taken up until the buckets are elevated to a position past a vertical line over the axis of the cylinder, C, when the aforesaid articles fall by gravity out of the elevated bucket and onto the back of the perforated side of the subjacent bucket and partition, n, and during this fall the articles to be dyed are turned over, so that in their succeeding passage through the dye-liquor and toward the top of the cylinder the dye-liquor penetrates the layers of fabric in the buckets in opposite direction from which it passed through the same during the previous revolution of the cylinder, and thus the fabric is dyed more uniformly throughout. Heretofore the buckets of the wheel or cylinder, C, have been formed concave or rounded transversely, and this form of the buckets caused the articles in process of dyeing to be rolled over in the bucket, and thus become more or less entangled or knotted in a mass and dyed unevenly. This, it will be observed, is effectually obviated by the angular or V shape of the buckets, L, L, of my improved apparatus."

The evidence is clear and conclusive that the dyeing machine constructed under and in accordance with this patent accomplished all that was claimed for it. It has quickened, cheapened, and bettered the dyeing art. It is not seriously, this court thinks, claimed that there was no patentable invention in this device for dyeing textile fabrics. When a person takes well-known materials fashioned into shape, and combines them in a new way, so as to produce new and beneficial results, he has invented a valuable thing. That is what Mr. Weldon did. The axle is not new. The motive power and mode of attaching it are not new. The vat is not new. The cylinder is not new. The boxes or bearings are not new. The rollers are not new. There is something new in the buckets themselves, which are either V-shaped or of similar angular shape in cross-section. The perforations or slattings of these buckets are not new. Any carpenter or mechanic could construct, either of wood or metal, one of these buckets or compartments. The invention consisted in the combination and putting together of these various things in a new way, and in such a manner as to produce new and beneficial results. Ginna v. M. M. Co., 63 U. S. App. 351, 92 Fed. 369, 34 C. C. A. 413.

Loom Co. v. Higgins, 105 U. S. 580–591, 26 L. Ed. 1177, says:

"It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day, when it never before had produced more than forty; and we think that the combination of elements by which this was effected, even if those elements were separately known before, was invention sufficient to form the basis of a patent."

See, also, Ryan v. Goodwin, 3 Sumn. 514, 518, Fed. Cas. No. 12,-186.

Complainant's patent is new, because substantially different, in construction, operation, and results produced, from anything that had preceded it.

This court is satisfied that this invention is both new and useful, as well as valuable, and that it wrought a revolution in the art of dyeing textile fabrics. This court is also satisfied that it is immaterial that the defendant's angular compartments or buckets are constructed in a somewhat different form from those made and used in the complainant's machine. These buckets are so constructed and arranged that the fabrics contained therein are, as the cylinder revolves, alternately dipped into and taken from the dyeing liquid, and are carried up through and above the liquid in the vat until the bucket has reached a position where its base is nearly perpendicular, when the fabric, instead of being allowed to slide down and double up at the end of the bucket, is quickly turned over, falling and resting upon the side of the bucket in its immediate front, and in this position is carried down to and into the liquid; thus allowing both sides equal access thereto. At this time the fabric may or may not leave the side of the bucket, but if it does it is immersed and floats in the dyeing liquid, and is almost immediately taken up by the empty bucket following, and so the process is repeated as long as the operator deems necessary. Thus the fabric is not only immersed in the dyeing liquid, but is moved through it, and during the process is kept in such a position that both sides are equally exposed to the action of the liquid, while it is kept in shape, and knotting, doubling, twisting, and entanglement are obviated. We have here inventive skill. That these machines constructed after this patent were an industrial and a commercial success is beyond question.

I have examined the evidence to see if the defense of anticipation has been sustained, and find nothing that will justify such a conclusion. There is some vague and uncertain evidence to the effect that certain persons had at some prior time long ago seen a similar machine, but when and where does not appear. This does not prove anticipation. It has been shown that certain machines to aid in dyeing textile fabrics had been in use, to a very limited extent, prior to the patent in question. One or more of these had an axle with arms not contained within a closed cylinder, which arms protruded into the vat of liquid where the fabrics were placed, and stirred them up as the axle revolved, but the effect of this stirring was uncertain and unsatisfactory. The stirring of the fabric lying in the liquid might result in turning it over, and might result in knotting, twisting, and massing it so as to prevent a uniform coloring. That such appliances were not satisfactory, goes without saying. They have all been carefully examined, and it is sufficient to say that they do not show anticipation.

Attention has been called to the Exhibits, so-called Gloversville Drum No. 1 and Gloversville Drum No. 2—cylinders with pins or shelves projecting inwardly from the surface. The fabrics to be dyed were placed within those cylinders, and the pins or shelves (in drum No. 2, projecting at an angle) were intended to pick up and drop the fabrics at intervals. They were not intended, and did not serve, to keep the fabric extended and in place, and to change the exposed surface. They were intended to stir up the fabrics, but this mode of operating tended to intensify, rather than obviate, the difficulties the complainant's patent overcame. The shelves did not form compart-

ments with buckets keeping the fabrics in place, but, rather, tended to continually roll and push them towards the center of the cylinder, in one mass. These shelves or pins, whichever were used in this style of a machine, may have suggested the idea of compartments with angular buckets or sides arranged as in the complainant's patent, but they fall far short of anticipation.

That the defendant has infringed and is infringing the complainant's patent is quite plain. The defendant has constructed and sold, as the proof shows, at least one dyeing machine which in all essentials, so far as claims 1, 2, 3, and 4 of the complainant's patent are concerned, is the same. It appropriates and uses substantially the complainant's V-shaped or similar angular shaped bucket. It has the angular compartments contained within the cylinder; and, while the construction of these V-shaped or similar angular shaped sections are not precisely alike, they are the same in all essential particulars, and operate in the same way and produce the same results with the fabric to be dyed, and were intended so to do. It is true that in the defendant's machine these buckets or compartments give access to the dyeing liquid at a different place, but this has no material effect upon the question at issue, for infringement in that regard is not claimed, and the purpose of the complainant's patent was to retain the fabric to be dyed in such a position as to prevent knotting, twisting, etc., and change sides with it so as to produce uniformity of results in dyeing. This is what the defendant's machine does, and it is accomplished by the same means and by a machine with the same number of compartments, each containing substantially the same angular shaped or V-shaped bucket. These are so arranged, and the cylinder in which they are contained is so revolved, that the fabric to be dyed is alternately within and without the dyeing liquid contained in the vat, and the fabric to be dyed is so placed and arranged in each bucket or compartment—whatever we call it—that it is carried up until the bottom of the bucket is in nearly a perpendicular position, when the fabric falls downward and forward, resting upon the side of the bucket or compartment in its immediate front, and in this position is carried on, as the cylinder revolves, until again immersed in the dyeing liquid, when, if it floats or tends to fall downward, it is almost immediately taken up and carried forward by the base of the bucket or compartment upon which it originally rested. That the inventor of the machine made and sold by the defendant had seen, was familiar with, and copied the complainant's machine, is evident. The proof shows that he had been in the employ of the complainant and familiar with the complainant's machine for years before allying himself with the defendant company. That the defendant's machine is not the exact counterpart of the complainant's machine is immaterial. White v. Rubber Co. (C. C.) 111 Fed. 190; Dowagiac Manufacturing Co. v. Plow Co. (C. C. A.) 118 Fed. 136; Union Pump Co. v. Battle Creek Pump Co., 43 C. C. A. 560, 104 Fed. 337, 338; Davis v. Perry (C. C. A.) 120 Fed. 941. Other cases to the same effect might be cited, but it is unnecessary.

It is not necessary to state in the claims of a patent that it extends to the thing patented, however its form or proportions may be varied. The law so interprets the claim of a patent without the addition of

those words. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; McMichael & Wildman Co. v. Stafford (C. C.) 105 Fed. 380.

A patentee is entitled to the benefit of all the beneficial functions of his invention, if a necessary consequence of the improvement, made and described in such a manner as to make it obvious that the inventor intended it. Stilwell v. Eufaula Co., 54 C. C. A. 584, 117 Fed. 410.

It is evident from the evidence in the case that the invention disclosed by the patent is one of utility and merit, and that same was not anticipated. It is also evident that the defendant has substantially appropriated it in the construction of his machine. It follows that the complainant is entitled to the usual decree for an injunction as prayed for, and for an accounting by the defendant.