REITER *et al. v.* JONES & LAUGHLIN, Limited, *et al.*

(*Circuit Court, W. D. Pennsylvania.* June 9, 1888.)

1. PATENTS FOR INVENTIONS—FURNACE—PATENTABILITY—INVENTION.
   Letters patent granted February 19, 1878, to J. H. Helm, assignor of Howard Morton, for an improvement in a furnace for heating links, consisting of a detachable crown to the fire-chamber, provided with a series of cells, which are plain openings passing through the detachable crown, the upper surface of which is furnished with grooves in which rest rods which support the links while being heated, are not void for want of invention.

2. SAME—EXTENT OF CLAIM.
   · The grooves in the upper surface of the detachable crown are a material part of the device; a claim for the cells or holes without the grooves having been rejected as non-patentable, and withdrawn before the patent issued in its present form.

3. SAME—NOVELTY.
   Evidence that a person made a perforated and grooved tile for the cover of a like furnace in 1875, the year before Helm's alleged invention; that he only used it a part of the time from 1875 to 1878; opposed by evidence that he did not use it prior to the fall of 1876,—does not show that the above patent is void by reason of prior invention.

In Equity. Bill for an accounting.
*D. F. Patterson,* for complainants.
*George H. Christy,* for defendants.

· BRADLEY, Justice. This is a suit on a patent granted to J. H. Helm, assignor of Howard Morton, for an improvement in furnaces for heating links, dated February 19, 1878. The invention is described as relating to an improvement in link-welding furnace; and as consisting in furnishing the crown of the furnace with a detachable section provided with cells for heating chain-links to a welding degree, and in the peculiar construction of the furnace and its stack with relation to said detachable section. The former part only is in question in this case, and is covered by the first claim of the patent, which is in the following words:

· "In a furnace for heating links, the detachable section, C, of the crown of the fire-chamber, D, said section being provided with grooves and cells, substantially as herein described, and for the purpose set forth."

· The description referred to is as follows:

"The detachable section of the crown, C, is manufactured from a good article of fire clay or clays, which will stand a great degree of heat. The detachable crown, C, is provided with a series of cells, *f*, which are plain openings which pass through the detachable crown, C. The upper surface of the crown-piece, C, is furnished with grooves, *m*, in which rest the rods, *g*, which support the links, *e*, while being heated."

,· In other words, C represents a cover or lid of the furnace, that can be removed at pleasure as it burns out, and that has holes in it, in which the links are placed to be heated preparatory to welding, being suspended upon rods lying on the top of the lid in grooves made for that purpose. The grooves serve to keep the rods steadily in position. Now, re-read ing the claim, it is plain that it is not the detachable lid alone, nor the lid with holes or cells alone, that constitute the invention; but a detachable lid provided with grooves and cells. This construction is enforced by a practical disclaimer which took place in the patent-office. The application for the patent was originally made by J. Henry Helm in September, 1876, and he assigned the invention to Howard Morton. Morton afterwards, on July 28, 1877, renewed the application, and submitted an additional claim for the cells or holes in the crown or lid, without the grooves. But this claim was rejected as non-patentable, and the claim was withdrawn.· The patent was then issued in the form it is in now. This was a clear renunciation of the proposed claim, and brings the case within the principle of *Leggett* v. *Avery*, 101 U. S. 256; *Cartridge Co.*, v. *Cartridge Co.*, 112 U. S. 624, 5 Sup. Ct. Rep. 475, and *Crawford* v. *Heysinger*, 123 U. S. 589, 8 Sup. Ct. Rep. 399. The grooves being a material part of the thing patented, the patent was not infringed if the defendants did not use them. It is contended by the defendants that they have not used the grooves for some time past, but they admit that they did formerly use them. For this former use, therefore, they are accountable if the patent is valid. This renders it necessary to inquire into its validity.

It is contended that the making of the grooves was no invention; and that, if it was, they had been made and used before for precisely the same purpose. The fair questions to put, however, are, was there no invention in the whole thing taken together, the detachable crown or lid with

its grooves and cells? And had such a crown or lid been made and used before? In answer to these questions the patent itself is *prima facie* evidence in favor of the patentee, or of the complainants who represent him; and unless there is clearly no invention in what is claimed to be such, or preponderating evidence of anticipation, the patent should be sustained. I cannot say that there was clearly no invention in the thing patented. It is certainly a very useful contrivance, and has greatly facilitated the making of chains. It could not, therefore, have been a very obvious improvement, or it would have been adopted long ago. As to alleged anticipation, there is, indeed, evidence that one Blakey made a perforated and grooved tile for the cover of a like furnace in 1875, the year before Helm's alleged invention. But the intermittent character of his operations, extending over a period of three years, from 1875 to 1878, in which he only used a tile part of the time, invests the date of his actual use with some uncertainty, and the evidence against such use prior to the fall of 1876 is of such a character that there cannot be said to be a clear preponderance of proof,—not so clear as to justify a decision against the validity of the patent. This is the conclusion to which I have come after a careful reading of the whole testimony, which need not be referred to in detail.

My judgment is that there must be a decree for the complainants, declaring that the grooves are a material part of the first claim of the patent, and that, thus construed, the patent is valid as to such claim, and that the defendants have infringed the same in using the detachable crown with grooves and cells, and that there should be a reference to ascertain the profits and damages arising from said infringement.