## McMICHAEL & WILDMAN MFG. CO. v. STAFFORD et al.

(Circuit Court, N. D. New York. December 20, 1900.)

### No. 6,606.

1. PATENTS—INVENTION—PRESUMPTION IN FAVOR OF PATENTEE.

In dealing with the question of invention, the courts should take a broad and liberal view, in harmony with the intent and purpose of the patent law; and a patent should be sustained unless there is clearly no invention shown, or the presumption of novelty arising from the patent itself is overcome by preponderating evidence. Any question of doubt is to be resolved in favor of the patentee.

2. SAME—INFRINGEMENT—IMPROVEMENT IN KNITTING MACHINES.

The McMichael and Wildman patent, No. 453,290, for an improvement 'in the horizontal cam-disk of circular rib knitting machines, which consists in making such disk in sections, each of which can be detached and removed, for the purpose of cleaning or repairing the machine, without disturbing its other parts, discloses invention and patentable novelty, and is valid; also, *held* infringed as to claims 2 and 5.

In Equity. Suit for infringement of patent. On final hearing.

The patent in controversy, No. 453,290, was granted June 2, 1891, to Mc-Michael and Wildman, of Norristown, Pa., for an improvement in the horizontal cam-disk of circular rib knitting machines, whereby the cams may be readily exposed or dismantled for examination, cleaning and removal of broken needles. The specification says: "Heretofore the cam-disks in machines of this class have been made of complete disks fitted upon the central shaft or support, and to obtain access to the needle-grooves, which may become clogged owing to the breakages in the needles, it has always been necessary to dismantle the entire upper part of· the machine, and after removing the shafts separate the portions constituting the dial and cam-disks. By our improvements the dismantling of the machine is entirely overcome· and that portion holding the needles remains in its normal position, while the cam portions are readily removed for repairs or cleaning without in any wise disturbing the remaining portions of the machine. In carrying out our invention we make the portions holding the cams divisible, so as to be bolted to or removed from ,a suitable hub carried upon the central shaft. The cam-disk in practice is preferably split across its diameter, and may be removed in two ·or more sections." The specification states further that in practice difficulty is· experienced from broken needles clogging the small·

throat of the cam portion and wedging in such a manner as to stop the proper operation of the machine. When those accidents occur it is only necessary to take off the semi-annular piece which covers the locality of the difficulty. In this way the needles can be exposed without disturbing them, the broken needles and other obstacles removed and the machine thoroughly cleaned and repaired. The drawings show the cam-disk divided into two parts, but the patentees do not limit themselves to this line of division. The disk may be divided into any number of parts and still be within the claims of the patent. The claims involved are the second and fifth. They are as follows: "(2) In a knitting machine, the combination of the needle-dial with the cam-disk divided into parts transversely to the plane of the needle-dial, a support for the needle-dial, and a detachable connection between the several parts of the cam-disks and the support for the needle-dial, whereby the cam-disk may be detached in sections without disturbing the support for the needle-dial." "(5) In a knitting machine, the combination of the needle-dial and its support with the adjustable cam, K, and a cam-segment supporting said adjustable cam and detachably secured to the support for the needle-head and removable from said support without disturbing its position in the machine." The defenses are lack of patentability, noninfringement and that the patentees are not joint inventors.

Ernest H. Hunter, for complainant.
George A. Mosher, for defendants.

COXE, District Judge (after stating the facts). The open dial circular rib knitting machine, which preceded the complainant's device in the art, though a structure of marvelous ingenuity, possessed several defects which seriously impaired its utility. The needles, arranged in horizontal grooves in the dial, were exposed to view. Lint was liable to accumulate in the grooves to such an extent that the needles would break and put the machine out of action until the damage could be repaired. Another difficulty with the open dial was that it afforded no means for preventing the horizontal needles from rising out of their grooves. "Gibs" or guards are now used to prevent this, but in the open dial machine there was no attachment for these guards. Still another objection was that when a multi-feed was used it was necessary to multiply correspondingly the separate cam supports, which added to the expense and intricacy of the machine. These difficulties were cured by covering the entire needle dial with a plate; but other difficulties, almost equally serious, were developed by the new construction. The needles and grooves which before were accessible were now completely covered, and when jams occurred, incident to the grooves becoming clogged with lint and broken needles, it was necessary to dismantle the machine or lift or remove the plate. The necessity for this action constantly occurred and frequently resulted in keeping the machine idle for half a day. The same repairs can now be made, if the device of the patent be used, in 15 minutes. Considering the relative merits of the two machines, the one having the open dial and the other the integral dial covering plate, it must be found that the advantages of the latter preponderate, for it has in a large degree supplanted the former in the market. The inference is, therefore, plain that, even with its unquestioned limitations, manufacturers preferred the dial plate machine to the open dial machine. The aim of the patentees

was to unite the advantages of the two machines. This is done by making the covering plate in removable sections so that it is only necessary to detach the section above the point where the difficulty occurs in order to repair the machine. There can be no pretense that this was ever done before. It was, however, old in the art to provide a vertical cam ring with detachable segments so that access could be had to the vertically moving needles. The question, then, is, in view of the fact that vertical cam cylinders had been made with removable parts, did it involve invention to divide the horizontal plate into removable sections? As is generally true in patent causes, much may be said upon each side of this proposition.

The reasons for holding the patent valid may be briefly summarized as follows:

First: The cam ring device, though relating to the same art, is very dissimilar in structure and would not suggest to a skilled mechanic a remedy for the defects of the open and closed dial machines. It is the difference between a jacket and a cap; changes in one would not necessarily suggest changes in the other.

Second: For years those skilled in the art, with the prior structures constantly before their eyes, continued to use the integral plate although its defects were obvious and were daily asserting themselves; and yet, mechanics not only, but inventors also, failed to perceive the analogy which the defendants now think is so obvious.

Third: Dividing the plate into detachable cam carrying sections and holding the plate in position by means of the flanged hub required something more than mechanical skill, even assuming that the prior art might have suggested the idea of constructing the plate in sections.

Fourth: Want of patentability must be proved; it ought not to rest on guesswork. If there be doubt, the patentees are entitled to the benefit of it. The presumption of novelty arising from the patent must be overcome. The proposition is clearly stated by Mr. Justice Bradley, in Reiter v. Jones (C. C.) 35 Fed. 421, as follows:

"It is contended that the making of the grooves was no invention; and that, if it was, they had been made and used before for precisely the same purpose. The fair questions to put however, are, was there no invention in the whole thing taken together, the detachable crown or lid with its grooves and cells? And has such a crown or lid been made and used before? In answer to these questions the patent itself is prima facie evidence in favor of the patentee, and unless there is clearly no invention in what is claimed to be such, or preponderating evidence of anticipation, the patent should be sustained."

Fifth: The exhibits marked "Fowler" and "Goffe" and the patent to Bennor of July 21, 1891, cannot be considered for any purpose. The Fowler and Goffe exhibits are merely unidentified drawings without proof of any kind, and the Bennor patent was issued after the patent in suit.

Sixth: The invention is not a great one. Such inventions may occur, but the probability is that they will appear with less frequency in the future than in the past. It would probably be a conservative estimate to say that 90 per centum of the patents now is-

sued are for improvements in existing methods and machines. It is the spirit of the patent law to encourage those who develop these improvements and keep this people in the van of industrial development. Remove this hope and inspiration and the American workman will become a soulless automaton with no more ambition than the tools of iron and brass with which he works. In dealing with the question of invention the courts should take a broad and liberal view and one in harmony with the intent and purpose of the law.

Infringement is clearly established. As to the second claim there seems to be no serious dispute, and as to the fifth claim there can be no doubt, unless the claim be limited to the exact form of cam shown in the drawings. Frequently the intent of the patentee in using a reference letter is to limit the claim to the exact construction shown, but in the case in hand there is no reason for such an interpretation found either in the patent itself or in the prior art. The patentees must have known of the numerous adjustable cams of the prior art and there is no ground for the assumption that they intended to destroy the patent by placing unnecessary limitations upon the claims. The supreme court say:

"Patentees sometimes add to their claims an express declaration to the effect that the claim extends to the thing patented, however its form or proportions may be varied. But this is unnecessary. The law so interprets the claim without the addition of these words." Winans v. Denmead, 15 How. 330, 14 L. Ed. 717.

The assertion that the sectional cap is without utility is hardly consistent with its persistent use. If the defendants be right in saying that the covering of the needle bed by the sectional plate is a positive disadvantage, the discontinuance of its use will inure to their benefit. The criticism that the invention is not a joint one is without adequate foundation. The complainant is entitled to a decree.