CLEVELAND FOUNDRY CO. et al. v. KAUFFMAN et al.

(Circuit Court of Appeals, Third Circuit. February 21, 1905.)

No. 27.

**1. PATENTS—INVENTION—RESOLVING DOUBT IN FAVOR OF PATENT.**

Where the question of the validity of a patent is in doubt, the doubt should rather be resolved in favor of than against the patent.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 35, 53, 62.]

**2. SAME—OIL BURNERS.**

The Jeavons patent, No. 702,560, for an oil burner, the important feature of which is the making of the stem of the needle valve which controls the oil supply to the burner of such size as to about fill the bore of its enveloping sleeve, so that it may be unthreaded from the valve body and used as a plunger in such sleeve to remove any obstruction in the valve orifice, shows a modification of prior forms of construction, which adds a new and useful function and discloses invention. Also held infringed as to claims 1 to 6.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 126 Fed. 658.

Thomas W. Bakewell and John R. Bennett, for appellants.

Stephen J. Cox, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. The Circuit Court held that the first six claims of the patent now before us were void for lack of patentable novelty, and upon that ground dismissed the bill of the complainants, the appellants here. The learned judge did not deal with the question of infringement, and all that need now be said upon that subject is that our examination of the record has left us in no doubt that the charge of infringement, separately considered, was clearly sustained.

Letters Patent No. 702,560, dated June 17, 1902, were granted to William R. Jeavons, for "oil burner," and the claims thereof with which this suit is concerned are as follows:

"(1) In an oil-stove, the combination of an oil-supply tank provided with means for the maintenance of a substantially constant level of oil therein, a burner-trough with its upper edge above the plane of the maintained oil-level in said tank, a supply-pipe between said tank and trough, and a valve and stem to control the outflow therefrom, and a sleeve for said valve-stem extending upwardly to a plane above the maintained level of oil in said tank and open at its top, the said valve-stem adapted to be reciprocated in said sleeve, whereby the contents of the oil-passages may be forcibly ejected and the said passages cleansed with the head of oil open to the burner-trough, substantially as described.

"(2) In an oil-stove, the combination of an oil supply tank provided with means for the maintenance of a constant level of oil therein, a burner-trough in position with its top edges above the level of oil in said tank, an oil-feed pipe projecting downwardly from said trough and a valve below said feed-pipe controlling the flow of oil to the burner-trough, a supply-pipe for the said

trough below said valve, and a sleeve for the said valve extending upwardly to a point above the level of oil in the said tank, said valve adapted to be reciprocated and to serve as a piston to force oil through the oil-passages leading to the burner-trough, substantially as described.

"(3) The combination of an oil-supply tank and means for the maintenance of a substantially constant level of oil therein, a burner-trough and a valve-body and oil-supply connections from the tank to said body and thence to the burner-trough, a sleeve projecting from said valve-body having its upper end above the maintained oil-level in the tank and a plunger in said sleeve adapted to force oil forward through the oil-passages, substantially as described.

"(4) The combination of an oil-supply tank and means for the maintenance of a substantially constant level of oil therein, a burner-trough with its top edges above the maintained level of the oil in said tank and a valve-body and oil-supply connections from the tank to said body and thence to the burner-trough, a sleeve projecting from said body having its upper end above the maintained oil-level in the tank and a plunger in said sleeve adapted to force oil forward through the oil-passages, substantially as described.

"(5) In an oil-stove, the combination of an oil-supply tank and means for the maintenance of a substantially constant level of oil therein, a burner-trough with its top edges above the level of the oil in said tank, and an oil supply passage from the tank to the said burner, a tubular sleeve open to said passage and having its upper end above the maintained level of the oil in the supply-tank, and means adapted to be reciprocated in said sleeve and to force oil to the burner-trough, substantially as described.

"(6) In an oil-stove, the combination of an oil-supply tank and means for the maintenance of a substantially constant level of oil therein, a burner-trough with its top edges above the plane of the constant oil-level of said oil-supply, a valve-body below said trough and in open connection therewith, through an upwardly-extending part, a tube for the valve-stem extending outwardly and upwardly from said valve-body with its top end above the plane of the said constant oil-level, and a valve-stem supported in said tube, said parts constructed and arranged to allow the reciprocation of the valve-stem in the said tube, substantially as described."

It is not necessary to discuss these claims in detail. The decision of the court below was based upon its finding that the patentee's "needle valve in an enveloping sleeve" was old, and that he merely "found a new way in which such mechanism could be employed"; that what he did was not the "devising new means, but rather the discovery of new uses to which an old mechanism could be put"; and the only substantial question is as to whether this finding was correct. The learned judge said: "The case is a close one. We have not arrived at our conclusion without hesitation, and there are grounds for strongly urging a different one." But we think that the doubt which he seems to have entertained should have been resolved in support of the patent. R. R. Co. v. Stimpson, 14 Pet. 459, 10 L. Ed. 535; Lehnbeuter v. Holthaus, 105 U. S. 96, 26 L. Ed. 939; Cantrell v. Wallick, 117 U. S. 695, 9 Sup. Ct. 970, 29 L. Ed. 1017. The ultimate finding of fact by which, as we have said, his decision was determined, is not, in our opinion, deducible from the primary facts. Jeavon's device for removing obstructions from the oil passages of the stoves to which the patent relates is the especially important feature of the organization which its specification describes. The court below said that it "consists of a threaded needle valve located in the lower end of an enveloping sleeve, the upper end of which is higher than the maintained level in the sup-

ply tank. This valve controls the oil supply to the burner, and in case the valve or burner becomes clogged, the valve-stem may be unthreaded and used as a plunger to agitate the oil, and so remove the clogging or objectionable substances." Now, it may be conceded that a threaded needle valve was old, but it is quite certain that the conversion of the stem into a plunger was new. The patentee did more than suggest a new use for an old device. By providing that the valve-stem should be "of such diameter as to about fill the bore of the sleeve," and for the disengagement of "its threaded portion from the body of the valve," he adapted it to the discharge of a distinctly new and highly useful service. As he said in his specification:

"The valve-stem, M, is threaded at n to engage with threads in the valve-body at this point, and is of such diameter as to about fill the bore of the sleeve or casing, N. When the said stem is revolved sufficiently to disengage its threaded portion from the body of the valve, it may be moved to and fro in the casing, N, and will act to agitate the oil somewhat after the manner of a pump-plunger, alternately drawing and forcing it through the valve-orifice and through passage, d, in the plug, D, and in this way the said passages may be flushed, and any dirt or water that may have accumulated therein will be dislodged."

This dislodgment was not to be accomplished by an unaltered valve-stem, but by a plunger produced by materially modifying it. By the means Jeavons devised the plunger was evolved, and, as it performs a beneficial function for which the valve-stem of the prior art was not designed, adapted, or used, we are of opinion that its creation involved invention. Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825, 36 L. Ed. 658; Clough v. Barker, 106 U. S. 176, 1 Sup. Ct. 188, 27 L. Ed. 134; Wickelman v. Dick, 88 Fed. 266, 31 C. C. A. 530; Boyer v. Keller Tool Co., 127 Fed. 130, 62 C. C. A. 244.

The decree of the Circuit Court is reversed, and the cause will be remanded to that court for further proceedings in conformity with this opinion.