TOLEDO METAL WHEEL CO. v. FOYER BROS. & CO.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1915.)

No. 2564.

1. APPEAL AND ERROR ☞356—TIME FOR PERFECTING APPEAL—DELAY WITHOUT FAULT OF PARTY.

Where an appeal was allowed and the amount of the appeal bond fixed by a Circuit Judge within the prescribed time, but approval of the bond and issuance of citation were referred to one of the District Judges, the appeal will not be dismissed because, by reason of the temporary absence of both District Judges from the district, approval of the bond and issuance of citation were delayed until after the expiration of 30 days.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1926, 1927; Dec. Dig. ☞356.]

2. PATENTS ☞112—SUIT FOR INFRINGEMENT—PATENT AS EVIDENCE.

The grant of a patent is prima facie evidence that the patentee is the first inventor of the device described and of its novelty.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ☞112.]

3. PATENTS ☞226—SUIT FOR INFRINGEMENT—EVIDENCE—DATE OF SALE.

Sales of infringing articles as acts of infringement are to be regarded as having been made when the contract of sale was made, irrespective of the time of delivery.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 357; Dec. Dig. ☞226.]

4. PATENTS ☞311—SUIT FOR INFRINGEMENT—PLEADING.

A petition of intervention, filed in an infringement suit for the purpose of showing a change in the ownership of the patent and consequently of the party in interest as complainant since the commencement of the suit, is to all intents an original bill in the nature of a supplemental bill, and where it adopts the original bill, which alleged infringement to the date of its filing, and that defendant "still continues to infringe," the petition should be treated as operating to extend the time of the alleged infringement at least to the date when it was filed, especially where it was so treated without objection on the hearing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 541, 542; Dec. Dig. ☞311.]

5. PATENTS ☞312—SUIT FOR INFRINGEMENT—SUFFICIENCY OF EVIDENCE.

Evidence considered, and held sufficient to make a prima facie case of infringement, where no evidence was offered by defendant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ☞312.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. ATTORNEY AND CLIENT ⊙⇒24—LIABILITY OF ATTORNEY FOR COSTS—VEXA-
TIOUSLY INCREASING COSTS.

Under Rev. St. § 982 (Comp. St. 1913, § 1623), which provides that if
any attorney appears to have multiplied the proceedings in a cause so as
to increase costs unreasonably and vexatiously, he shall be required, by
order of the court, to satisfy any excess of costs so created, as well as by
the common law, a court has power on motion to order costs taxed
against an attorney, where it appears that he is unreasonably and vexa-
tiously prolonging the taking of depositions by excessive cross-examina-
tion or unwarrantably obstructing the examination of his client by in-
structing him not to answer proper questions.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 32–
36; Dec. Dig. ⊙⇒24.]

Appeal from the District Court of the United States, for the West-
ern Division of the Northern District of Ohio; John M. Killits,
Judge.

Suit in equity by Foyer Bros. & Co. against the Toledo Metal
Wheel Company. Decree for complainant, and defendant appeals.
Affirmed.

J. S. Dodge, Jr., of Chicago, Ill., for appellant.
Almon Hall, of Toledo, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit
Judges.

WARRINGTON, Circuit Judge. [1] This was a suit to enjoin
alleged infringement of a patent, and issue was joined through an-
swer and replication. The appellee (plaintiff) offered evidence to sup-
port the allegations of the bill, and thereupon the appellant (defend-
ant) moved to dismiss the cause on the ground that plaintiff's proofs
did not make a prima facie case. The motion was denied, and defend-
ant, declining to introduce proofs in defense, prayed final hearing.
Decree was entered finding infringement and granting the usual
injunction, reference, and accounting, and the decree contained other
features, which will be considered later.[1] The controlling question
arising upon the appeal is, whether plaintiff's evidence establishes a
prima facie case.

The patent in suit was granted September 7, 1909, numbered 933,-
079, to Otto Kurz, assignor to Melvin J. Foyer, for certain improve-
ments in folding perambulators. The perambulators are collapsible

---

[1] Appellee has moved to quash the citation and dismiss the appeal, because
the appeal bond was not perfected and the citation issued within 30 days of
the rendition of the decree. The appeal was allowed and the amount of the
appeal bond fixed, within the prescribed time, by a Circuit Judge of the
Sixth Circuit; but approval of the bond and issue of the citation were referred
to one of the District Judges of the Northern District of Ohio. Such approval
and issue were delayed until after expiration of 30 days, but by reason alone
of the temporary absence of both District Judges. The acts of approval and
issue occurred upon the return of one of the District Judges. Since the delay
mentioned was caused by no fault of appellant, we think the appeal was
rightly perfected; and the motion to dismiss should be denied. Peugh v.
Davis, 110 U. S. 227, 228, 4 Sup. Ct. 17, 28 L. Ed. 127; J. D. Randall Co. v.
Foglesong Mach. Co., 200 Fed. 741, 742, 743, 119 C. C. A. 185 (C. C. A. 6th Cir.).

vehicles adapted to the convenient transportation of children. The collapsible feature is designed for folding the vehicle into small compass so that it may be easily carried, transported, or stored. October 30, 1909, Foyer filed his bill, January 3, 1910, the defendant answered, and on the 27th of that month the replication was filed. The issues presented were not unusual. The infringement charged was that:

"After the issuing of the letters patent * * * and before the commencement of this suit," defendant "did, without the license * * * of your orator, and in violation of his rights and in infringement of the aforesaid letters patent, and particularly claims 2, 3, 4, 5, 6, 7, 8, and 12 thereof, * * * make, construct use and vend to others to be used vehicles made according to * * * said invention and that it still continues so to do, and that it is threatening to make the aforesaid vehicles in large quantities and to supply the market therewith, and to sell the same."

November 13, 1909, and before any of the evidence was adduced, a corporation was organized under the laws of Ohio, in the name of the Foyer Bros. & Co.; and on the 29th of that month Foyer assigned the patent to this corporation, and the assignment was recorded in the Patent Office April 8, 1910. July 5, 1910, the company filed an intervening petition in the cause, setting up its incorporation and alleging that it was engaged in the business of manufacturing and selling perambulators, "commonly called 'gocarts' or 'baby carriages,'" reciting the facts before indicated, and adopting as part of the petition the allegations of the bill previously filed by Melvin J. Foyer, as stated; it prayed to be permitted to prosecute the cause; that defendant be required to appear and answer though not under oath; that petitioner be granted the same relief prayed by Foyer, "and for such other and further equitable relief as your petitioner may be entitled to in the premises." Defendant appeared and answered, and issue was joined.

The taking of evidence was begun February 21, 1911. The plaintiff offered certified copies of the articles of incorporation of the Foyer Bros. & Co., of the letters patent, and of Foyer's assignment of the patent (which is in due form) to the corporation, as such assignment appears of record in the Patent Office. Foyer testified that he signed the original of this instrument, and that he is president and general manager of the company. Concededly, as early as September 21, 1909, defendant received a letter from Foyer's counsel, stating, among other things, that Foyer had learned that defendant was "making and selling folding perambulators which infringe the patent of September 7, 1909, No. 933,079," and notifying defendant "to cease this infringement." Defendant's president had stamped the letter as "Answered," but he did not find the answer. An important catalogue was introduced through a witness, Mr. Silverman, who testified:

"Q. Have you in your possession and can you produce a catalogue of gocarts of the Toledo Metal Wheel Company for the year 1909? A. I have; here is one."

His firm (the Kobacker Furniture Company of Toledo) was a dealer in gocarts manufactured by defendant. This catalogue bears

on the outside of the first sheet of its cover, near the top, the following: "The 'Favorite' Automatic Collapsible Gocarts," near the bottom, "The Toledo Metal Wheel Co., Toledo, Ohio," and the second sheet of the cover contains on the inside, "The 'Favorite' Line of Gocarts, Children's Carriages, etc., for 1909." On page 3, pictures of a gocart, both in open and folded forms, called alike "No. 'B'" and "Special 'B,'" appear; and on page 4, pictures, in similar forms, of "No. 'C'" are found. The catalogue also contains a stamped statement over the printed signature of defendant, with its address:

"Your dealer can supply you with any of our line. If not, we will sell you. A full line of all kinds shown at our office."

A full-sized sample of each of these particular types of perambulator was offered in evidence and produced in court. There is stenciled on the bottom of one, "Spec. B," on the other, "C," and on each is fastened an oval metal plate, which is stamped on the upper portion thus, "The Toledo Metal Wheel Co.," on the lower portion, "Toledo, Ohio," and between these, "Favorite."

Plaintiff called a mechanical expert, Alexander S. Stuart, who described the patented device in detail, and with respect to each of the claims in suit. Having his attention called to "a folding perambulator or collapsible gocart, upon the back of which is fastened a metal plate having stamped thereon the following: 'The Toledo Metal Wheel Co., Toledo, Ohio, The Favorite'"—and being asked whether that device was described in the specification of the patent and in the several claims in suit, he summed up quite an extended answer, thus:

"In said Favorite perambulator I find each and all of the elements included in and called for by each of the said claims of the patent numbered 2, 3, 4, 5, 6, 7, 8, and 12, and each of said elements as embodied in the Favorite perambulator has the characteristics of and functions similar to the corresponding elements called for and embodied in the said claims."

And in the course of his cross-examination he further stated:

"Your question implies a knowledge of a prior art which discloses the invention of the patent in suit. I know of no such prior art."

Although the witness was subjected to long and severe cross-examination, we do not see that his conclusions or the reasons given in their support, in his direct testimony, were materially affected.

Still it is contended that the foregoing is not enough to connect defendant with either the manufacture or sale of any of the perambulators described in the catalogue or with the effect of the testimony of the expert, and especially as respects the time intervening between the issue of the patent in suit and the filing of the original bill in 1909 —a period of 53 days. Additional evidence, however, appears in the record. Plaintiff called Mr. Southard, the president and general manager of the defendant, as a witness to testify by deposition, whose course on the witness stand is sufficiently shown below:

"Q. Does the defendant company issue to the trade catalogues of the goods manufactured by it? A. Upon instruction of counsel, I decline to answer. Q. Did the Toledo Metal Wheel Company ever make any carts like the 'Complainant's Exhibit, Defendant's Cart?' A. In what particular? Q. Like it? A. We have made carts similar in appearance." ·Again: "Q. I show you

'Complainant's Exhibit, Defendant's Cart No. 2.' State, if you know, who made the cart. A. I do not know. Q. What is your best judgment about it? A. Upon advice of counsel I refuse to answer."

Several questions were put to the witness for the purpose of eliciting answers touching defendant's manufacture of carts of this kind, one of which upon advice of counsel the witness refused to answer, and the others he answered thus:

"A. The Toledo Metal Wheel Company have not manufactured any gocarts with bails as described, eliminating the mechanical detail, since September 21, 1909. Q. Has the Toledo Metal Wheel Company since September 21, 1909, sold any folding gocarts having the feature referred to in my last question? (Witness declined to answer). Q. Did the Toledo Metal Wheel Company ever manufacture any collapsible gocarts with a front releasing bail, and, if so, when did it cease to manufacture such carts? A. They did not manufacture any collapsible gocarts with a front releasing bail after September 7, 1909. Q. Did you sell any such carts after September 7, 1909?" (Witness declined to answer.)

The witness' attention being directed to the metal plate fastened to the exhibit "Defendant's Cart No. 2," which is stamped "The Toledo Metal Wheel Company, Toledo, Ohio, Favorite," he testified:

"Q. Is this stamp in all respects such a stamp as has been used by the Toledo Metal Wheel Company? A. It is very similar. Q. If it differs in any respect, point out the difference. A. I won't be able to do that without one of the Toledo Metal Wheel Company's so-called stamps for comparison. Q. I show you the same stamp on the back of the seat back of the 'Complainant's Exhibit, Defendant's Cart.' Can you say that either one of these stamps is, in your opinion, not genuine? A. They are not the same stamps. There is a very material difference in them. It is my opinion that one of them is not genuine. Q. Which one? A. I can't say which. Q. Why do you think so?" (Under instruction of his counsel, question not answered).

It will be noted that the witness in effect admitted that one of the metal plates was genuine. Moreover, Mr. Silverman, to whom reference has been made, distinctly identified two of the exhibits in evidence (full-sized perambulators) which bear unmistakable evidence that they correspond with two of the carts displayed in the catalogue he produced as stated; and metal plates are attached to these exhibits (perambulators), containing words the same as those to which Southard's attention was called and concerning which he testified. Silverman continuing, said:

"Q. I show you a folding gocart, marked herein for identification 'Complainant's Exhibit, Defendant's Cart No. 2.' Please state whether or not your firm has ever bought and sold carts like this exhibit. A. We have. Q. How is the cart 'Complainant's Exhibit, Defendant's Cart No. 2,' known to the trade, if you know? A. By the numbers 'B Special.' Q. Do you find on this cart any mark identifying it as a number B Special? if so, please point it out. A. On the bottom [witness points to the letters "B-Spec"]. Q. When did you purchase carts like 'Complainant's Exhibit, Defendant's Cart No. 2,' and which you have designated as number 'B Special?' And from whom? * * * A. I purchased them from Mr. Crosby of the Toledo Metal Wheel Company some time in November, 1909, and they were delivered in December, 1909. * * *"

As to the number so purchased he said:

"A. On December 1, 1909, 36; December 9, 1909, 31; December 13, 1909, 11; December 16, 1909, 25"—103 in all.

His attention was called later to the other perambulator (type "C"):

"Q. How is the cart 'Complainant's Exhibit, Defendant's Cart,' known to the trade? A. By the number C. Q. Upon the bottom or under side of 'Complainant's Exhibit, Defendant's Cart,' is stamped or stenciled in white a large letter 'C.' Do you know what this means? and, if so, please tell us. A. Yes; it is the lot number of the cart."

The witness stated that his firm purchased of defendant one of these carts December 16, 1909, and produced invoices showing all the purchases. Mr. Stewart, manager of the Globe Furniture Store of Toledo, testified that in March, 1910, his company purchased of defendant more than 50 of its "B Special" carts, and that they were delivered during March, April, and July following; such sales being further proved by invoices. Allen Shaw was in defendant's employ as an inspector of its collapsible gocarts for a period of about three months in the spring of 1910. His attention being called to "Complainant's Exhibit Defendant's Cart No. 2," he testified that such carts were known in the factory of defendant as "B Special," and that he inspected them; that he marked them thus, " 'B Special' on the bottom of the seat"; that they were then "packed and shipped"; that defendant manufactured these carts "before and after" he began work at the factory; that he inspected "about 200" gocarts; and that Mr. Southard visited the room in which witness worked "three to four times a week."

The case made, upon a reasonable interpretation of the entire evidence, with the inferences to be justifiably drawn therefrom, may, as respects the question here involved, be summed up as follows:

[2] (a) The grant of the letters patent is prima facie evidence that the patentee is the first inventor of the device in issue and of its novelty. Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017; Reiter v. Jones & Laughlin (C. C.) 35 Fed. 421, 423, per Mr. Justice Bradley; Beer v. Walbridge, 100 Fed. 465, 466, 40 C. C. A. 496 (C. C. A. 2d Cir.); Streator Cathedral Glass Co. v. Wire Glass Co., 97 Fed. 951, 952, 38 C. C. A. 573 (C. C. A. 7th Cir.); Cleveland Foundry Co. v. Kauffman, 135 Fed. 360, 361, 68 C. C. A. 658 (C. C. A. 3d Cir.); Western Electric Co. v. Millheim Electric Tel. Co. (C. C.) 88 Fed. 505, 507, per Buffington, Circuit Judge, then District Judge; McMichael & Wildman Manufacturing Co. v. Stafford (C. C.) 105 Fed. 380, 382; Shaver v. Skinner Manufacturing Co. (C. C.) 30 Fed. 68–70, per Shiras, District Judge; T. B. Wood's Sons Co. v. Valley Iron Works (C. C.) 191 Fed. 196, 200.

(b) The catalogue shown was the catalogue of defendant for 1909, and it contained, among other things, a distinct offer to sell any of the entire line of defendant's perambulators.

(c) The perambulators displayed in this catalogue, which are marked "B Special" and "C," correspond with the full-sized perambulators produced in evidence.

(d) These vehicles infringe the patent in suit.

[3] (e) More than 100 of these types of perambulator were sold by defendant in November, 1909, and delivered in December of that year; more than 50 were sold in March, 1910, and delivered in that

month and in April and July following; and as acts of infringement such sales are to be regarded as having been effected in November and March. Schiebel Toy & Novelty Co. v. Clark, 217 Fed. 760, 773, 133 C. C. A. 490 (C. C. A. 6th Cir.).

[4] We need not pass upon the question whether the evidence and the inferences to which it reasonably gives rise warrant a conclusion that defendant infringed between the date of the patent in suit and the filing of Foyer's original bill. We think the intervening petition should be treated as having operated to extend the period of alleged infringement at least to the date of its filing, July 5, 1910. Evidently the parties so treated it; for evidence was introduced to cover that period, and we do not find objection made to the evidence on the ground that it related to a time subsequent to commencement of the original suit. The object of the intervention was plainly to introduce a fact which had occurred after the original suit was begun. It was to show a change of ownership of the patent in suit and a consequent change of the real plaintiff in interest; and the pleading is, to all intents and purposes, an original bill, in the nature of a supplemental bill. Ecaubert v. Appleton, 67 Fed. 917, 924, 15 C. C. A. 73 (C. C. A. 2d Cir.); 1 Hopkins' Pat. p. 520, § 388, and citations. It is true that the pleading incorporated the `original bill by· adoption. The bill, however, alleges that the defendant infringed the ·invention—

"after the issuing of the letters patent * * * and before the commencement of this suit, * * * and that it [defendant] still continues so to do, and that it is threatening to make the aforesaid vehicles in large quantities and to supply the market therewith, and to sell the same."

The extent of infringement charged was a practical appropriation· of the invention. The theory of such an infringement, as well as its execution, would necessarily involve preparation and expenditure in mechanism and manufacture on the part of defendant. Presumably such a scheme, if resorted to at all, would become part of the business of defendant, and so in its nature would be continuing. The injurious effects of the infringement manifestly would not change because of a change in ownership of the patent. It is therefore hard to believe that the new owner would intentionally have limited the period of infringement to a time less than that disclosed by the facts; and, since the adoption included that portion of the bill which in charging infringement alleged that defendant "still continues so to do," the supplemental bill fairly shows that the intent was to extend the period. If the present claim had been called to the attention of the court below, either before or after decree, an amendment might well have been allowed as a precautionary measure to conform the pleadings strictly to the proofs (The Tremolo Patent, 90 U. S. [23 Wall.] 522, 527, 23 L. Ed. 97; Richmond v. Irons, 121 U. S. 27, 46, 7 Sup. Ct. 788, 30 L. Ed. 864; Hardin v Boyd, 113 U. S. 756, 764, 5 Sup. Ct. 771, 28 L. Ed. 1141), but` (although plaintiff's pleadings were open to criticism) there is nothing in the equity rules or practice requiring such a degree of exactness as an amendment of the character mentioned would signify (O'Rourke Engineering Const. Co. v. McMullen, 160 Fed. 933, 942, 88 C. C. A. 115 [C. C. A. 2d Cir.]).

Moreover, any rule that would exclude the evidence showing infringement up to the date of intervention would, in principle, be inconsistent with the long-settled practice to show acts of infringement occurring after commencement of the suit, when taking accounts of profits. In taking such accounts the master is not limited even to the date of the decree, but may extend the account to the time of the hearing before him, if the infringement still continues. Any other rule would result in a multiplicity of suits and unnecessary loss of time and expense. Rubber Company v. Goodyear, 76 U S (9 Wall.) 788, 800, 19 L. Ed. 566; Untermeyer v Freund, 58 Fed. 205, 212, 7 C. C. A. 183 (C. C. A. 2d Cir.); Maimen v. Union Special Mach. Co., 165 Fed. 440, 441, 442, 91 C. C. A. 384 (C. C. A. 3d Cir.). It results that the evidence before pointed out was admissible.

[5] It cannot be necessary further to consider the evidence. True, the prayer of the original bill did not contain the ordinary waiver of defendant's oath to its answer, but the prayer of the intervening petition did; and it is vain to say, as counsel do, that since both answers are verified, the adoption of the bill operated to impose upon the corporate plaintiff the burden of proving the allegations of the pleadings by two witnesses. Still, if counsel's theory were accepted, the evidence is sufficient to establish a prima facie case. In all material respects the rule invoked as to two witnesses is distinctly met; and the inferences deducible from the affirmative evidence, as well as the circumstances disclosed, are to be added. Vigel v. Hopp, 104 U. S. 441, 26 L. Ed. 765; Schultze v. Holtz (C. C.) 82 Fed. 448. Thus plaintiff's right to relief becomes reasonably plain. And this is not answered by the suggestion that an infringement is a tort. This is of course true; but a resort to terminology cannot change the nature or the effect of the evidence required to prove the fact of infringement, any more than it could with respect to any other fact constituting a tort. The argument made in support of the defense is throughout necessarily technical, and it is forcefully presented. In the light of the evidence, however, the contentions made would seem to indicate that there was no other course open to defendant. As Judge Lacombe said in Badische Anilin & Soda Fabrik v. A. Klipstein & Co. (C. C.) 125 Fed. 543, 559, when commenting on the failure of defendants to offer evidence touching an important feature of the case:

"The circumstance that defendants have chosen instead to devote their energies, at great cost of time and labor, to elaborate and refined criticisms of complainant's proof, is persuasive to the conclusion that it was the only thing they could do."

[6] It remains briefly to consider the portion of the decree which imposed upon the counsel who appeared for defendant in the court below a portion of the costs, and ordered him to appear before the court at a time stated to show cause why he should not be punished for contempt. The acts so condemned occurred in the taking of depositions. The costs ($75.24) were imposed for excessive cross-examinations of two of the witnesses, and obstructing the direct examination of another; and the order to show cause was "for improperly and un-

reasonably directing the witness, Frank E. Southard, **to refuse to**
answer the several questions properly put to him."

The court's attention was called to these matters by motion of.
plaintiff which was filed more than six months before entry of the de-
cree, and presumably, made in pursuance of section 982 of the Re-
vised Statutes (U. S. Rev. Stat. p. 184) which provides:

"If any attorney, * * * admitted to conduct causes in any court of
the United States, * * * appears to have multiplied the proceedings in
any cause before such court, so as to increase costs unreasonably and vexa-
tiously, he shall be required, by order of the court, to satisfy any excess of
costs so increased."

The decree recites that the motion was heard upon argument of
counsel, and in substance finds, as to two of the witnesses, that coun-
sel multiplied the proceedings in the cause and so increased plain-
tiff's costs and expenses unreasonably and vexatiously, and, as to
the remaining witness, that counsel unwarrantably instructed the
witness not to answer proper questions, and so, in large measure,
rendered plaintiff's attempt to take the deposition "futile and ineffec-
tive," and that his conduct in this behalf was "obnoxious to the or-
derly, reasonable, and proper conduct of an examination." Counsel
was given individually an exception to each of these orders, error
was assigned directly upon the orders, and argument thereon has
been made here. Objection is not taken to the fact that the orders
were made in the pending suit, instead of an independent summary
proceeding, and the orders are in character final. Examination of
the depositions convinces this court that the course pursued by coun-
sel would, but for the orders, have resulted in increasing plaintiff's
costs unreasonably and vexatiously. The orders were manifestly
made to shield appellant against excessive costs, and they should be
sustained (Bogart v. Electrical Supply Co. [C. C.] 27 Fed. 722. See,
also, Motion Picture Patents Co. v. Steiner, 201 Fed. 63, 64, 119 C.
C. A. 401 [C. C. A. 2d Cir.]); and the power of a court to protect
a litigant against costs so created by his counsel would exist inde-
pendently of the statute, inasmuch as the rule at common law is broad
enough to redress such a matter through summary proceedings
(Bowling Green Savings Bank v. Todd, 52 N. Y. 489, 493, per Judge
Peckham, later Mr. Justice Peckham of the Supreme Court; In the
Matter of H., an Attorney, 87 N. Y. 521, 525, 526; Matter of Dakin,
4 Hill (N. Y.) 42; Jeffries' Adm'r v. Lawrie [C. C.] 27 Fed. 198,
by Circuit Judge, subsequently Mr. Justice Brewer; In the Matter of
Aitkin, 4 B. & Ald. 47, 49, per Chief Justice Abbott).

We cannot consider the order to show cause, for obviously it is
in no sense a final order. There are no other assignments requiring
notice in the opinion. The decree is affirmed in all respects, save
the order requiring counsel to appear and show cause; and the
appellant will pay all the costs, except the portions in terms imposed
upon its counsel.