## GINNOCHIO v. HYDRAULIC PRESS BRICK CO.

(District Court, S. D. Ohio, E. D.    April 14, 1920.)

No. 1804.

1. **Master and servant** ⬦➡348—**Time of taking effect of Ohio Workmen's Compensation Act.**

Under Ohio Workmen's Compensation Act March 14, 1913, which went into effect January 1, 1914, and section 22 of which provides that employers subject to the act. "shall in the month of January, 1914, and semiannually thereafter," pay the premium determined by the State Industrial Commission, or may at their election, with the consent of the commission and on giving security, undertake to pay compensation direct to their injured employés or their dependents in case of death, an employer which prior to January 1, 1914, notified the commission of its intention to comply with the statute and its election to pay direct, and thereafter did all that was required of it without delay or default, paying the premium and furnishing its bond on January 30th, *held* under protection of the act as of January 1st.

2. **Statutes** ⬦➡219—**Construction by administrative tribunal of great weight.**

The contemporaneous and practical construction of a statute by a state administrative tribunal, whose duty it is to carry the statute into effect, while not absolutely controlling upon the courts, is entitled to the most respectful consideration, and ought not to be overruled without cogent reasons.

3. **Statutes** ⬦➡199—**"Fail to comply."**

The words "fail to comply" in general have the same operation in law as the words "refuse to comply."

4. **Master and servant** ⬦➡348—**Employer, complying with statute, not debarred from benefit by delay caused by public officials.**

An employer, who has complied with a workmen's compensation statute on his part without delay or default, is not debarred of its protection because of delay by a public official or administrative board in performance of a ministerial duty.

At Law.    Action by Charles Ginnochio, administrator, against the Hyraulic Press Brick Company.    On demurrer to second and third defenses of answer to second amended petition.    Demurrers overruled.

Paxton, Warrington & Seasongood, of Cincinnati, Ohio, for plaintiff.

Bulkley, Hauxhurst, Saeger & Jamison, of Cleveland, Ohio, and Edward R. Meyer, of Zanesville, Ohio, for defendant.

⬦➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SATER, District Judge.    [1] The charge made in the second amended petition is briefly as follows: The decedent, Curcio, while engaged in the course of his employment by defendant, on account of its negligence met with an injury on January 2, 1914, in consequence of which he died on the day following. The defendant regularly employed at that time more than five workmen and operatives in and about its business and establishment, and had not paid into the insurance fund, as provided by the Workmen's Compensation Act of Ohio, passed March 14, 1913 (103 Ohio Laws, p. 72), any sum for the benefit of employés who might be injured or the dependents of those who might be killed in the course of their employment, and had not otherwise complied with any of the provisions of such act. The prayer is for recovery on account of the defendant's alleged specific acts of negligence.

The second defense contains the following averments: The defendant in December, 1913, and thereafter, employed more than five workmen and operatives regularly in its business. On December 29, 1913, it notified the Industrial Commission, successor to the state liability board of awards, of its intention to comply with the abovementioned act and of its election to pay compensation directly to its injured employés or the dependents of such as might be killed in the course of their employment. Its application for authority so to pay was approved by the commission on January 7, 1914. On January 12 the commission issued its statement of premium to defendant and fixed the amount of the bond required of it under the act. On January 30 such bond was filed and the premium paid. The bond was approved by the commission on February 3. Defendant asserts compliance as of January 1 with the act and the orders of the commission, and claims that at the time of Curcio's injury and death it was entitled to all the protection, rights, and privileges afforded to employers who have complied with its provisions, and that Curcio's dependents are limited to the compensation therein provided, and cannot hold the defendant to respond in damages. The third defense is contributory negligence.

To each of such defenses a demurrer is interposed. The provisions of the statute which deny compensation in cases of injury or death "purposely self-inflicted" are not involved. If the defenses named are good, it is because defendant's application, which was on file with the commission on January 1, when the act went into effect, and its subsequent compliance within that month with all legal requirements, entitled it to protection at the date of Curcio's accident and death.

Under the well-pleaded facts, admitted by the demurrer to the second defense the defendant, if it complied with the provisions of section 22, is not liable in damages at common law or by statute. Section 23. If it did not thus comply, it is subject to the following pertinent provisions of section 26:

"Employers mentioned in subdivision 2 of section 13 hereof, who shall fail to comply with the provisions of section twenty-two hereof, shall not be entitled to the benefits of this act during the period of such noncompliance, but shall be liable to their employés for damages suffered by reason of personal

injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer, or any of the employer's officers, agents or employés, and also to the personal representatives of such employés where death results from such injuries, and in such action the defendant shall not avail himself or itself of the following common law defenses: The defense of the fellow servant rule, the defense of the assumption of risk or the defense of contributory negligence."

The defendant, having had in its service down to Curcio's death five or more workmen regularly in its establishment under contract of hire, was an employer within the terms of subdivision 2 of section 13. Curcio was an employé within the definition of that term found in subdivision 2 of section 14. The second subdivision of section 21 provides that the dependents of an employé who is killed "on and after January 1, 1914," in the course of his employment, "shall be entitled to receive, either directly from his employer as provided in section 22 hereof, or from the state insurance fund, such compensation for loss sustained on account of such injury or death, and such medical, nurse and hospital services and medicines, and such amount of funeral expenses in case of death, as is provided by sections 32 to 40 inclusive." Section 22, in so far as pertinent, is as follows:

"Except as hereinafter provided, every employer mentioned in subdivision two of section thirteen hereof shall, in the month of January, 1914, and semi-annually thereafter, pay into the state insurance fund the amount of premium determined and fixed by the state liability board of awards for the employment or occupation of such employer the amount of which premium to be so paid by each such employer to be determined by the classifications, rules and rates made and published by the board: * * * Provided, * * * that such employers who will abide by the rules of the state liability board of awards and as may be of sufficient financial ability or credit to render certain the payment of compensation to injured employés or to the dependents of killed employés, and the furnishing of medical, surgical, nursing and hospital attention and services and medicines, and funeral expenses equal to or greater than is provided for in this act, * * * may, upon a finding of such facts by the state liability board of awards elect to pay individually , * * * such compensation, and furnish such medical, surgical, nursing and hospital services and attention and funeral expenses directly to such injured or the dependents of such killed employés; and the state liability board of awards may require such security or bond from said employers as it may deem proper, adequate and sufficient to compel, or secure to such injured employés, or to the dependents of such employés as may be killed, the payment of the compensation and expenses herein provided for, which shall in no event be less than that paid or furnished out of the state insurance fund, in similar cases, to injured employés or to the dependents of killed employés, whose employers contribute to said fund. * * *"

On May 18, 1915, Wallace D. Yaple, as chairman of the Industrial Commission, after stating the facts disclosed by its record as to defendant's application for classification of industry and premium, which facts are the same as those pleaded in the second defense, wrote the defendant as follows:

"During the month of January, 1914, which was the month in which the Workmen's Compensation Act of 1913 became compulsory, this department was unable to transact the immense volume of business which came to it, which accounts for the delay from December 30, 1913, to January 12, 1914, in advising the company of the amount of its bond and premium, and also for the delay from January 30, 1914, to February 3, 1914, in approving the bond. Section 22 of the Compensation Act seems to contemplate that the employer

should have the entire month in which to comply with the provisions of the act by either paying his premium into the state insurance fund or by electing to pay compensation, etc., direct, and we have held in a number of state insurance cases that where an employer paid his premium into the fund at any time during the month of January that he was protected from the 1st day of January. We think the same thing should be true in self-insurance cases as well, and it appears that the Hydraulic Press Brick Company complied with the terms of the act and did all that it was required to do within the month of January; its bond and premium being received on January 30, 1914. That being true, it is our opinion that it complied with the law and that it was under compensation from January 1, 1914."

No other utterance affecting a case of like character has been cited. The Industrial Commission, however, on July 1, 1914, in Biddinger v. Champion Iron Co., 13 O. L. R. 65, rendered another opinion, which, notwithstanding the difference in facts reflects that body's views and practice in dealing with an employer who proceeds to qualify under the act. The company's application for classification was filed on December 17, 1913. On account of correspondence between it and the commission in reference to the proper classification of the industry in which it was engaged, its classification and rating and the amount of its first annual premium were not determined until March 6, 1914, on which date it was furnished with a "pay-in order," directed to the treasurer of state, authorizing him to receive the amount of the premium. The company, the commission held, had the opportunity to comply with the law not later than March 10, but it did not do so until after the death of its employé on April 10. The commission said:

"Had the injury resulting in Biddinger's death occurred prior to the 6th of March, 1914, we would have no hesitancy in arriving at the conclusion that the company had made diligent effort to comply with the law, and so had done all that could reasonably be required of it, and under such circumstances would order the compensation paid out of the state insurance fund. But we do not think that the facts in this case justify such a course. The provisions of the act are clear. Section 22 provides in substance that it shall be the duty of all employers employing five or more employés to either pay their premium into the state insurance fund in the month of January, 1914, and semiannually thereafter, or, by proper proceedings before the Industrial Commission, to make arrangement to pay compensation direct to their injured and the dependents of their killed employés. The language is plain and there is no room for construction, and it is obvious that to order payment of compensation in this claim out of the state insurance fund would not only be a plain violation of the law, but would establish a precedent which would be prolific of abuses."

[2] The contemporaneous and practical construction of the statute by the Industrial Commission, an administrative tribunal, whose duty it is to carry it into effect, is entitled to great respect. Though not absolutely controlling, it is entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. U. S. v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Barrett v. Grays Harbor Commercial Co. (D. C.) 209 Fed. 95; Industrial Comm. v. Brown, 92 Ohio St. 309, 311, 110 N. E. 744, L. R. A. 1916B, 1277. I am convinced that its views, as expressed by its chairman, Mr. Yaple, are correct. One of the methods of compensating injured or the dependents of killed employés is effected by the employer paying into the

state insurance fund the amount of premium fixed by the Industrial Commission, as determined by its classifications, rules and rates; another is by the employer's paying the compensation himself, providing he is able to furnish satisfactory proof to the commission of his financial ability so to do, in which case the commission may require of him such security or bond as will in its judgment insure payment to persons entitled to the same. Employers thus availing themselves of the statute are arranged into two classes—(1) contributors from choice to the state insurance fund; and (2), noncontributors thereto, who by their own election and by permission of the commission pay directly to the prescribed beneficiaries. The statute establishes the rule of equality as to their status, and also as to the amount of compensacion to be received by employés, whether it be paid from the state insurance fund or directly by their employers. In addition to section 22, see also the second subdivisions of sections 21 and 22, the first subdivision of section 25, sections 23, 26, and 29, and State v. Fidelity Co., 96 Ohio St. 250, 117 N. E. 232.

It is true that under the second subdivision of section 25 a noncontributing employer may, by reason of some rule or regulation of his own, be compelled to pay a greater compensation than a contributing employer; but the establishment and maintenance of such rule or regulation is entirely voluntary on his part. The statute expressly provides that, beginning with January 1, 1914, the dependents of an employé killed in the course of his employment—his death not being purposely self-inflicted—shall be compensated from the state insurance fund (if his employer has become a contributor to such fund), or by his employer (if such employer has qualified to pay directly to them). Its provisions are equally clear that the employer, whether a contributor to the state insurance fund or of the class to which the defendant belongs, if he brings himself within the terms of the act within that month becomes entitled, as of the 1st day of such month, to all the protection the act affords. Curcio's dependents, in consequence of his death, became entitled to compensation from the defendant, and this was so, even if the petitioning employer and the Industrial Commission had not performed all the acts required of them respectively by statute. Their right and defendant's liability were coexistent.

The Legislature declared that the injured and the dependents of killed employés should be compensated, and designated the means by which and the persons by whom payment shall be made. The law-making body, it must be presumed, was cognizant of the physical inability of the Industrial Commission to consider and dispose of the multitude of applications of employers immediately after midnight of December 31, 1913, or for some time thereafter. It did not intend that either employés or employers should even temporarily be deprived of the benefits of the act. Having conferred the right to compensation for injury or death occurring on and after January 1, it therefore by section 22 gave employers the whole of the month of January in which to qualify under its provisions. The defendant in this case, having within that time met every requirement imposed on it, obtained all the protection

and benefits which the act accords. The protection thus secured related back to and became effective with the beginning of January 1. It was permissible for the Legislature thus to provide (Bernard v. Michigan United Traction Co., 198 Mich. 497, 165 N. W. 846); the purpose of the retroactive feature being to prevent penalizing of an employer by the denial to him of his common-law defenses after his lawfully declared intention and diligent effort to come under the act.

The statute is highly remedial in character (Honnold, Workmen's Compensation, § 6, p. 25), and is not therefore violative of the state Constitution (Peters v. McWilliams, 36 Ohio St. 155, 161, 162). Retrospective laws that violate no principle of natural justice, but are in furtherance of equity and good morals, are not forbidden in Ohio. Trustees of Cuyahoga Falls Real Estate Ass'n v. McCaughy, 2 Ohio St. 152, 153. That an employer who, in the month of January, diligently endeavored to bring himself within the statute, shall have its benefits as of January 1, is not expressly declared in the Ohio act, as in that of Michigan; but it is necessarily implied, and what is implied in a statute is as much a part of it as what is expressed. Gelpcke v. City of Dubuque, 68 U. S. (1 Wall.) 175, 17 L. Ed. 520; Id., 68 U. S. (1 Wall.) 221, 17 L. Ed. 519: U. S. v. Babbit, 66 U. S. (1 Black) 55, 61, 17 L. Ed. 94. The defendant by virtue of such relation back became liable, commencing with January 1, to compensate its injured or the dependents of its killed employés, who in the meantime had met with accident or death in the course of their employment. Had the defendant become a contributor to the state insurance fund, the protection afforded to the parties hereto would have been the same. Other provisions which give both classes of employers the whole of the month of January, in each and every year the statute remains in force, to bring themselves by diligence within its protection for the whole of that month, and which confer on its designated beneficiaries the right to compensation, are found in sections 17 and 19, and subdivision 1 of section 21.

[3] Consideration of section 26 points to the conclusion above reached. The employers who are debarred from the benefits of the statute during noncompliance therewith are those "who shall fail to comply with the provisions of section 22." "Fail" means "to be wanting in action." Cent. Dict. The words "fail to comply," in general, have the same operation in law as the words "refuse to comply." Taylor v. Mason, 22 U. S. (9 Wheat.) 325, 344, 6 L. Ed. 101. Had the defendant been wanting in diligence, and prolonged performance on its part beyond the month of January, the rule applied in the Biddinger Case, it would seem, would have obtained. But the defendant did not refuse, and was not wanting in action, to comply with the requirements of the statute. Notice of acceptance of its provisions even preceded the date on which it became operative, the sufficiency of which notice cannot be questioned. Coakley v. Mason Mfg. Co., 37 R. I. 46, 90 Atl. 1073.

[4] To the charge of noncompliance before January 3, the answer is that, if there were such in fact, it was not such noncompliance as depended on the will of the defendant, but was rather due to the com-

mission's discharge of its manifold duties preventing the defendant's earlier qualification to secure the protection of the act. On such a state of facts the defendant's position would be quite as favorable as that of the person to be benefited by a statute, who has performed within the time allotted therefor all that was required to be done by him, but who falls short of complete performance within such period on account of the failure of some public official or board to perform a ministerial or administrative duty. He will not under such circumstances be penalized for the delay in official action (Coakley v. Mason Mfg. Co., supra; Industrial Com. v. Patterson, 65 Ohio Law Bull. 94), or denied the protection and benefits which the statute confers (Pace v. Volk, 85 Ohio St. 413, 416, 417, 98 N. E. 111; Heininger v. Davis, 96 Ohio St. 205, 213, 117 N. E. 229; Burchard v. State, 83 Ohio St. 1, 93 N. E. 199). His rights have been preserved, even when the misapprehension or inability of a judge has delayed action. J. D. Randall Co. v. Foglesong Mach. Co., 200 Fed. 741, 119 C. C. A. 185 (C. C. A. 6); Toledo Metal Wheel Co. v. Foyer Bros. & Co., 223 Fed. 350, 138 C. C. A. 612 (C. C. A. 6).

The demurrers to the second and third defenses are overruled, and an order may be taken accordingly.